HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DUSTIN T. THEOHARIS,

           Plaintiff,

      v.

KRISTOPHER RONGEN,

           Defendant.

CASE NO. C13-1345RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the motion of Plaintiff Dustin Theoharis to strike eight of Defendant's "rebuttal" expert witness reports, to prohibit those experts from offering any evidence, and to award him attorney fees and costs.  For the reasons stated below, the court GRANTS the motion in part and DENIES it in part.  Dkt. # 39.

## II.  BACKGROUND

The court reluctantly slogs once again into the quagmire that has been the parties' disclosures of expert witnesses.  The court has done so once before, in a June 16 order that described Defendant's counsel's failure to diligently complete discovery necessary for Defendant's experts to provide complete reports.  At that time, the parties had made only their initial disclosures of expert witnesses in compliance (or in alleged compliance) with Federal Rule of Civil Procedure 26(a)(2).  Plaintiff noted that many of Defendant's expert reports were explicitly incomplete, in that the experts admitted that they had not

ORDER – 1

reviewed critical medical records, evidence from Plaintiff himself describing the shooting incident at the core of the case, and other evidence necessary to form complete opinions. Plaintiff asked the court to strike the reports on that basis. The court declined to do so, but cautioned Defendant's counsel that it would consider sanctions if counsel attempted to remedy the defects in the experts' reports by providing "rebuttal" or "supplemental" reports beyond the scope of permissible rebuttal or supplementation under Rule 26(a)(2).

Since then, Defendant disclosed new expert reports on June 20, 30 days after the court's May 21 deadline for expert reports. No one contends that the new reports are supplemental reports within the scope of Rule 26(a)(2)(E), so they are timely only if they are proper rebuttal reports within the meaning of Rule 26(a)(2)(D)(ii), which permits expert disclosures "intended solely to contradict or rebut evidence on the same subject matter" from an opposing party's expert. Plaintiff points to 8 reports out of the 11 that Defendant disclosed on June 20 that are neither rebuttal nor supplementation. He asks the court not only to strike the new reports, but to preclude the experts who offered the reports from testifying at all, even for those experts who also submitted reports by the May 21 deadline. He also asks for attorney fees and costs.

Before considering Plaintiff's request as to 8 of the new expert reports, the court considers the parties' expert disclosures in the broader context of this case. Defendant, Officer Kristopher Rongen of the Washington Department of Corrections, along with a King County Sheriff's deputy, shot Mr. Theoharis at least a dozen times after they found him in his bed after they arrested another person in a home. There is no dispute that in the more than two years since the February 2012 shooting, Mr. Theoharis has incurred hundreds of thousands of dollars in medical expenses, and that his medical expenses will continue to grow. There are disputes as to whether those expenses are reasonable, his future medical and rehabilitative needs, and the extent to which he will be able to work in the future. The parties also have sharp disputes about whether the shooting was lawful. All of these disputes are set for a 7-to-10-day jury trial on November 17.

ORDER – 2

The parties propose to have at least 25 expert witnesses testify during those 7 to 10 days. Plaintiff provided 14 reports from 13 experts in May; Defendant provided at least 8 reports from 8 experts in May. Defendant disclosed at least 4 (and perhaps as many as 6) new experts in June, and it is not clear if Plaintiff designated any new experts at that time. A trial day before the undersigned judge consists of 5.5 hours of jury time, excluding breaks. If the parties could somehow avoid selecting a jury, making opening statements, presenting any fact witnesses at all, and making closing arguments, they would have about 1.5 hours to devote to each expert witness (including direct and cross examination) for a 7-day trial, and about 2.25 hours for each expert witness in a 10-day trial. In other words, the parties ought to rethink their expert designations.

The parties have yet to reveal to the court the subject matter of each expert's testimony, but the disclosures the court has examined so far do not suggest a model for efficient use of the jury's time. Defendant has designated at least 5 witnesses to opine as to whether Ofc. Rongen acted reasonably; Plaintiff designated at least 3 experts for the same topic. No party has acknowledged that this District's local rules prohibit a party from calling more than one expert witness on any topic, without leave of court. Local Rules W.D. Wash. LCR 43(j). Even setting aside the parties' over-designation of experts to address the reasonableness of the officers' actions (an issue the jury is capable of deciding with no assistance from experts), the court suspects that there is much overlap in the expected testimony of the parties' experts. The motion before the court is the fourth in a month arising from the parties' expert disclosures, and the court has yet to consider whether the experts offer proper opinion testimony (many of them, particularly the "experts" on police conduct, seem to wish to instruct the jury on how to interpret basic evidence, like eyewitness testimony). The court also has yet to consider whether the parties' disclosures are cumulative, such that presenting each expert witness would be a waste of the jury's time.

With these comments in mind, the court considers Plaintiff's motion to strike.

ORDER – 3

### III.   ANALYSIS

**A.    Federal Rule of Civil Procedure 26(a)(2) Delineates the Scope of Rebuttal Expert Testimony.**

Rule 26(a)(2), which governs a party's obligation in disclosing expert testimony, first entered the Federal Rules of Civil Procedure in 1993.  Experts specially engaged to provide expert testimony must furnish written reports that include a "complete statement of all opinions the witness will express and the basis and reasons for them," all "facts or data considered by the witness," and various disclosures related to the expert's qualifications, compensation, and prior expert testimony.  Fed. R. Civ. P. 26(b)(2)(B)(i)-(vi).  Absent a court order to the contrary, the parties must disclose expert testimony "at least 90 days before the date set for trial."  Fed. R. Civ. P. 26(b)(2)(D)(i).  A party may also, however, offer rebuttal expert testimony – testimony "intended solely to contradict or rebut evidence on the same subject matter" as another party's expert disclosure – within 30 days after the other party's disclosure.  Fed. R. Civ. P. 26(b)(2)(D)(ii).  In this case, the court's scheduling order set a May 21 deadline for both parties' expert disclosures, two months before the close of discovery on July 21.  The court set no deadline for rebuttal experts, meaning that they were due 30 days after the disclosure of the initial report.  Because neither Plaintiff nor Defendant suggest that they exchanged any initial expert report prior to May 21, the court (like the parties) treats June 20 as the deadline for rebuttal expert reports.

There is scarce appellate authority explaining the difference between an expert's Rule 26(a)(2) initial disclosures and her rebuttal disclosures, and the district courts have articulated a wide range of standards.  This court's interpretation begins with the text of Rule 26(b)(2)(D)(ii), which declares that rebuttal reports are those "intended *solely* to contradict or rebut evidence" in an opposing party's expert disclosure.  The court has emphasized "solely."  At a bare minimum, a rebuttal expert cannot offer testimony unless the expert whom she rebuts has offered testimony.  In addition, a rebuttal expert cannot

ORDER – 4

offer evidence that does not contradict or rebut another expert's disclosure merely because she also has also offered some proper rebuttal.

Because neither Rule 26(a)(2) nor any other binding authority imposes additional restrictions on rebuttal expert testimony, the court declines to do so. The court acknowledges that district courts have taken various approaches in drawing the line between rebuttal expert testimony and non-rebuttal testimony. One that closely comports with this court's view is from another of this District's judges. In *Daly v. Far Eastern Shipping Co.*, 238 F. Supp. 2d 1231, 1239 (W.D. Wash. 2003) (Coughenour, J.), the court considered two expert witnesses who addressed the conclusions of a Navy report on a maritime incident. Plaintiff disclosed an expert who attacked the report, Defendant disclosed one who largely agreed with it. *Id.* Plaintiff's expert disclosed that he was conducting an experiment to undermine the report, but had not yet completed it. *Id.* Plaintiff then disclosed a "rebuttal report" in which he announced the results of the completed experiment, but contended that it was a rebuttal to the defendant's expert. *Id.* at 1240. The court found the experiment to be beyond the scope of proper rebuttal, because it "did not address any particular opinion in [defendant's expert]'s report," but was "a new means to support [plaintiff's expert]'s original opinion that the [Navy] report was flawed." *Id.* at 1240-41. The court noted, among other things, that plaintiff's expert had begun the experiment before he had any expert testimony to rebut. *Id.* at 1241. The court excluded the tardy disclosure. *Id.*

Other courts have taken looser views, concluding that as long as an expert contradicts or rebuts the same "subject matter" as an opposing party's expert, she has offered rebuttal evidence. *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 637 (D. Haw. 2008). A modified version of that viewpoint permits rebuttal testimony that "question[s] the assumptions and methods" of an opposing expert, without presenting "new facts" or "novel argument." *LaFlamme v. Safeway, Inc.*, 3:09-cv-514-ECR-VPC, 2010 U.S. Dist. LEXIS 98815, at *8 (D. Nev. Sept. 2, 2010).

ORDER – 5

Other courts suggest a stricter view – that expert testimony is not rebuttal testimony where it addresses an anticipated (or reasonably anticipatable) portion of the other party's case. *E.g.*, *Downs v. River City Group, LLC*, 3:11-cv-885-LRH-WCG, 2014 U.S. Dist. LEXIS 26056, at *6-7 (D. Nev. Feb. 28, 2014) (citing cases); *Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, No. 1:10-cv-148 LJO JLT, 2011 U.S. Dist. LEXIS 52792, at *12-13 (E.D. Cal. May 17, 2011).  The court disagrees.  This standard comports more closely to the standard for evaluating rebuttal testimony (expert or percipient) *at trial*, where rebuttal witnesses typically need not be disclosed at all.  In that context, a rebuttal witness for the plaintiff is one who testifies during the rebuttal phase of trial, and who may only "meet new facts brought out in her opponent's case in chief." *Morgan v. Commercial Union Assur. Cos.*, 606 F.2d 554, 555 (6th Cir. 1979) (cited in *Downs*, 2014 U.S. Dist. LEXIS 26056, at *7).  And although the defendant typically enjoys no rebuttal phase at trial, a "defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything close to one." *Id*. at 556.  These distinctions matter at trial because rebuttal witnesses, whether expert or percipient, generally need not be disclosed in advance of trial.  To ensure that a party does not suffer prejudice from a surprise witness disclosed near the end of trial, a court may exclude improper rebuttal witnesses, as was the case in *Morgan*.  *Id*. at 556 (excluding purported "rebuttal" witness who defendant called to testify that the plaintiff had a pre-existing back condition, because defendant knew since the outset of the case that plaintiff would testify he had no pre-existing condition).

By contrast, rebuttal expert disclosures are expected, by default, to come at least 60 days before trial.  A party who does not bear the burden of proof on an issue may be keenly interested in avoiding the expense of designating an expert witness on that issue. If, however, the party with the burden of proof offers a compelling expert disclosure, the opposing party can still designate a rebuttal expert in compliance with the rules.  For that

ORDER – 6

reason, the court declines to adopt the rule that expert testimony on an anticipated portion of an opposing party's case cannot be rebuttal expert testimony.  *See Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-LRS, 2012 U.S. Dist. LEXIS 72137, at *6 (E.D. Wash. Apr. 4, 2012) (explaining that Rule 26 "does not automatically exclude anything an expert could have included in his or her original report") (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)).  Rule 26(a)(2) provides more flexibility for rebuttal expert testimony than traditional notions of rebuttal testimony at trial.  Where a *plaintiff* attempts to introduce rebuttal expert testimony, the concerns about unfair surprise from rebuttal experts more closely resemble those applicable to rebuttal witnesses at trial.  But in a case like this one, where it is the defendant offering rebuttal testimony, the context is markedly different.  Waiting until the rebuttal deadline carries risk.  If an opposing party offers no expert disclosures, or only narrow disclosures, there will be little or nothing to rebut.  But Rule 26(a)(2) does not prohibit a party from assuming the risk inherent in relying on a rebuttal expert disclosure.

**B.      Defendants' New Expert Reports Consist of Some Proper Rebuttal and Some Untimely Non-Rebuttal.**

With these basic principles in mind, the court turns to the 8 "rebuttal" reports that are the subject of Plaintiff's motion.  The court first considers the 4 reports from experts who were not previously disclosed, then the 4 reports from experts who previously submitted a non-rebuttal expert report.

**1.      Reports From Newly-Disclosed Rebuttal Experts**

The court begins with the report of Thomas Wickizer, who offers opinions about whether approximately $950,000 of Plaintiff's medical bills are comprised of reasonable charges.  Defendants did not disclose Mr. Wickizer as a witness until June 20.  By itself, that presents no concern, because Rule 26(a)(2) does not require a rebuttal expert to be disclosed before the deadline for rebuttal disclosures.  *E.g.*, *Johnson v. Grays Harbor Comm. Hosp.*, No. C06-5502BHS, 2007 U.S. Dist. LEXIS 95725, at *4 (W.D. Wash.

ORDER – 7

Dec. 18, 2007). But his report is timely only to the extent it rebuts or contradicts one of Plaintiff's experts. *See id.* at *6 ("Plaintiff is cautioned that his experts will be permitted only to offer rebuttal testimony at trial."). Plaintiff suggests that Mr. Wickizer is no rebuttal expert because he does not so much as mention any of Plaintiff's experts or their reports. But that is also not determinative. *Lindner*, 249 F.R.D. at 636 (reviewing case law declining to strike rebuttal reports that "did not state . . . that they reviewed the reports of the [opposing party's] experts"). Karina Vega, one of the experts who provided a report on Plaintiff's behalf in May, also offered opinions about whether the cost of Plaintiff's medical care was reasonable. In some ways, Mr. Wickizer squarely rebuts her conclusions. She concluded, for example, that over $18,000 in airlift and ambulance costs were reasonable, whereas Mr. Wickizer opined that the reasonable value of those services was about $4,700. That is a rebuttal opinion. That Mr. Wickizer announced his own methodology for reaching his opinion is not improper, it is a requirement of valid expert testimony. On the other hand, Mr. Wickizer offered conclusions that go beyond the scope of Ms. Vega's report. She considered bills totaling about $913,000, whereas Mr. Wickizer considered bills totaling about $946,000. Among the additional bills were about $7,000 from St. Francis hospital. Mr. Wickizer's opinion that only about $3,500 of those bills were reasonable is not rebuttal to Ms. Vega, and thus Defendant did not timely disclose it. Mr. Wickizer's report is proper expert rebuttal testimony to the extent it contradicts Ms. Vega's conclusions, and untimely expert testimony to the extent it offers opinions on bills and other matters about which Ms. Vega offered no opinion.

Dr. James Vandenbelt, a psychiatrist, purports to address the reports of Plaintiff's expert psychiatrist, Dr. Andrew Saxon. He concurs with Dr. Saxon's assessment that Plaintiff suffers from post-traumatic stress disorder ("PTSD"). He also addressed the possibility that medication would lessen Plaintiff's PTSD symptoms over time, although it is not clear whether he has any disagreement with Dr. Saxon's views on that topic. Dr.

ORDER – 8

Vandenbelt also addressed the conclusions of Plaintiff's expert Kathryn Reid, a rehabilitation counselor who wrote a report that included a "life plan" addressing Plaintiff's future medical needs, including home care needs, as well as his need for vocational rehabilitation. Ms. Reid, in consultation with Dr. Saxon, recommended ongoing counseling with a pain psychologist. Dr. Vandenbelt agreed, but believed that fewer sessions might be necessary. That is proper rebuttal testimony. Some of Dr. Vandenbelt's report is not rebuttal. First, to the extent that he intends to testify about his review of Plaintiff's medical records except as necessary to support a proper rebuttal opinion, he may not do so. Also beyond the scope of rebuttal is his opinion that if Plaintiff were to continue to use illicit drugs (as he admittedly did prior to the shooting), it would adversely impact his mental health. That opinion goes beyond the scope of Dr. Saxon's report. He also opined that Dr. Saxon did not account for anxiety problems for which Plaintiff obtained treatment *before* the shooting, and for the possibility of depression unrelated to the shooting. Dr. Saxon offered no opinion on any pre-existing or unrelated mental health conditions, and Dr. Vandenbelt's attempt to do so is not proper rebuttal.

Dr. Clifford Nelson purports to rebut the report of Plaintiff's forensic pathologist, Dr. Eric Keisel. Dr. Keisel examined the medical records to determine whether Plaintiff's gunshot wounds were consistent with Defendant's account of Plaintiff's actions when he (and the Sheriff's deputy) shot him. Dr. Keisel's opinion, boiled down, is straightforward: Plaintiff had no gunshot wounds to his back, which to Dr. Keisel's mind discredits the officers' accounts that they began shooting when Plaintiff was rolled onto his stomach and reaching between the mattress and box spring. Dr. Nelson's view is that several of the wounds could have been incurred while Plaintiff was in a twisted position, which is consistent with the officers' accounts that Plaintiff stopped reaching under the mattress and rolled onto his back as the shooting happened. It appears that Dr. Nelson and Dr. Keisel have relatively little dispute in the area of their medical expertise –

ORDER – 9

they do not disagree about the location of the gunshot wounds.  They appear to disagree about what the officers actually said about when the shooting began.  In any event, the court finds nothing in Dr. Nelson's report that exceeds the scope of proper rebuttal, even if his disagreement with Dr. Nelson as to what the officers actually said about the shooting is beyond the scope of expert testimony.

Dr. Carl Wigren also examined Plaintiff's medical records to respond to Dr. Keisel's report.  He believes that there is evidence of at least one shot to Plaintiff's back, in contradiction to Dr. Keisel's opinion.  That is proper rebuttal testimony.  Also proper (assuming it falls within the scope of his expertise), is his review of literature to estimate how long it might have taken Mr. Theoharis to roll from his stomach to his back.  Dr. Wigren also reviews the evidence to dispute Dr. Keisel's conclusion that the mattress contained no bullet holes that suggested that the officers might have missed with one or more shots.  The court queries whether either expert is qualified to opine about bullet holes in mattresses (as opposed to bullet holes in people), but to the extent the witnesses are qualified, Dr. Wigren's opinion contradicts Dr. Keisel.

Concluding its review of Defendant's disclosures from the four rebuttal experts who he did not previously disclose, the court concludes that Dr. Nelson and Dr. Wigren offered reports that are entirely rebuttal testimony.  Dr. Vandenbelt and Mr. Wickizer offered reports consisting in part of proper rebuttal testimony, and in part of testimony that rebuts none of Plaintiff's expert disclosures.

### 2.    New Reports From Experts Who Also Offered Initial Reports

Dr. James Russo is Defendant's expert orthopedic physician.  When he submitted his May report, he admitted that he had medical records only through January 2013, and he admitted that his lack of more recent records hampered his ability to offer opinions.  By June, he had reviewed the report of two of Plaintiff's experts:  Dr. Theodore Becker, who opined about Plaintiff's physical limitations with respect to his ability to work;[1] and

---

[1] Dr. Becker's report is not part of the record before the court.

ORDER – 10

Dr. Jennifer James, a physician who offered comprehensive opinions on Plaintiff's medical status. Dr. Russo's new report offers little more than a summary of Plaintiff's expert reports. He states that he would not change any of his opinions in the May report, except in two areas where Dr. James's review of more recent medical records suggest that he was wrong. This is not rebuttal, it is an acknowledgement of the weaknesses of his own report. He cannot correct his own errors by borrowing from another physician who had better records. And a statement that his own opinions have not changed is not rebuttal, it is unnecessary reiteration. As to Dr. Becker, he merely opines that his assessment of Plaintiff's physical capacities is not inaccurate, but that his capacities are likely to improve if he continues in physical therapy. That is proper rebuttal testimony.

James Gracey is a rehabilitation consultant who nominally addresses Ms. Reid's report and "life plan." His attempt to modify his previous report by considering Dr. Russo's review of medical records after May 21 is not a proper subject of rebuttal testimony. Indeed, he claims to have reviewed Dr. Russo's June 16 report, a report that Defendant's counsel decided not to submit after concluding that it violated this court's prior order. Much like Dr. Russo, Mr. Gracey uses his new report to state that he would not change any of the conclusions of his May report, except for a few conclusions he would change in light of Dr. Russo's review of more recent medical records. Just as those opinions were beyond the scope of rebuttal in Dr. Russo's new report, they are beyond the scope of rebuttal in Mr. Gracey's new report. His only rebuttal to Ms. Reid's report is to disagree with her regarding Plaintiff's need for a wheelchair and wheelchair-accessible vehicle and to disagree with her recommendations as to limited case manager support. Those opinions are proper rebuttal.

David Staskiewicz, who filed a May report opining on the officers' use of force, filed a new report consisting not of rebuttal, but of attacks on the qualifications of Plaintiff's experts. He concluded that Plaintiff experts Robert Thornton and Leo Poort were not qualified to offer opinions, and thus declined to rebut them. He concluded that

ORDER – 11

Plaintiff expert Michael Brasfield was largely unqualified (because he has not worked in the field as a law enforcement officer for almost 40 years). He addressed a few of Mr. Brasfield's opinions, but his disagreements consist mostly of disagreements over the interpretation of the evidence. The jury, not any of the party's experts, will decide what happened on the day of the shooting. The experts' disagreements over what happened are irrelevant. He offers a few disagreements with Mr. Brasfield's conclusions about the reasonableness of certain actions. To the extent that Mr. Brasfield is permitted to testify, Mr. Staskiewicz may offer those few rebuttal opinions. Mr. Staskiewicz's opinions about the qualifications of other officers are not proper rebuttal testimony.

Finally, another of Defendant's use-of-force experts, Craig Allen, also provided a second report. He purports to rebut a host of Plaintiff's experts. He contends that Dr. Keisel failed to consider the officers' reaction time both in beginning to shoot and in ceasing to shoot, that Dr. Jan Zemplenyi (a plastic surgeon) made errors in assessing Plaintiff's body position, as did Mr. Brasfield, Mr. Poort, and Mr. Thornton. To support his assertions, he conducted what he calls a "movement analysis" in which he used an actor about Plaintiff's size and attempted to recreate the circumstances of the shooting. To do so, he had to rely on some evidence that Defendant did not provide him with prior to his May report, including Plaintiff's recent deposition transcript. The court's review of Mr. Allen's new report suggests that he has attempted to rebut the opinions of Plaintiff's experts. The court suggests no opinion on whether Mr. Allen's report is proper expert testimony, but if it is, it is rebuttal expert testimony.

Before considering remedies that both address Defendant's improper rebuttal disclosures and ensure that he does not improperly use his proper rebuttal disclosures, the court notes that it does not purport to have exhaustively identified every bit of non-rebuttal disclosure within these 8 reports. This is in part because the court does not have all of the parties' expert reports and cannot make a complete comparison, and in part because some of the reports are simply too lengthy. The court expects the parties to work

ORDER – 12

cooperatively to address any other non-rebuttal disclosures in accordance with this order. The court will impose sanctions on any party not adhering to the principles expressed in this order if additional motion practice is necessary.

**C.    The Court Imposes Remedies to Address Defendants' Proper and Improper Expert Rebuttal Disclosures.**

The court now considers the remedy for those portions of Defendant's experts' reports that exceed the scope of rebuttal.  Rule 37(c)(1) provides a sanction for failure to make a disclosure required under Rule 26(a) – "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This exclusion sanction, which the Federal Rules advisory committee deemed "self-executing" and "automatic," is designed to provide a strong inducement to make required disclosures of expert evidence and fact evidence.  *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).  The party who failed to make the disclosure bears the burden of proving that its untimely disclosure was substantially justified or harmless.  *Id.* at 1107.  A court has "particularly wide latitude" in its decision to impose sanctions via Rule 37(c)(1).  *Id.* at 1106.  In addition to (or instead of) the "automatic" exclusion sanction, the court may award attorney fees and reasonable expenses, may inform the jury of the party's untimely disclosure, and may fashion other sanctions, including the evidentiary sanctions listed in Rule 37(b)(2)(A)(i)-(vi).  Fed. R. Civ. P. 37(c)(1)(A)-(C).

Defendant has not proven that his untimely disclosures of non-rebuttal expert testimony were substantially justified or harmless.  At best, Defendant's lack of diligence (which the court detailed in its June 16 order) left him in the position of having to exceed the scope of proper rebuttal testimony to make up for shortcomings in his initial expert disclosures.  Lack of diligence is not substantial justification, and the court explained in its June 16 order why his late expert disclosures are not harmless.  *See also Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (excluding untimely

ORDER – 13

disclosed witness "even though the ultimate trial date was still some months away," noting that "[d]isruption to the schedule of the court and the other parties . . . is not harmless").

Plaintiff overreaches in its request that the court prevent these eight expert witnesses from testifying at all.  The court disagrees with Plaintiff's assertion that it is impossible to segregate the experts' untimely non-rebuttal evidence from their proper rebuttal evidence.  The court has already done so, at least in part, and the court is confident that Plaintiff will be able to identify any other testimony beyond the scope of proper rebuttal.

The court will order a small attorney fee award.  The majority of this motion was based on Plaintiff's belief that if Defendant *could* have disclosed expert testimony before the rebuttal deadline, he was *required* to do so.  That belief does not comport with the Rule 26(a)(2), as the court has explained in Part III.A.  Nonetheless, there were significant aspects of Defendant's rebuttal reports that went beyond the scope of rebuttal, and the court already warned Defendant that it would award attorney fees if it chose that path.  Accordingly, the court orders the parties to meet and confer to discuss an appropriate attorney fee award based on the reasonable fees Plaintiff's counsel would have incurred if counsel had focused solely on the portion of the reports that were not proper rebuttal.  If the parties agree on the award, they need not inform the court.  If they disagree, Plaintiff may file a motion for attorney fees no later than August 22.  The court will require any party who takes an unreasonable position in that motion to pay additional attorney fees.

The court declines, at this time, to impose additional sanctions arising from Defendant's untimely expert disclosures.  The court does, however, emphasize the consequences of Defendant's decision to offer certain expert testimony solely as rebuttal.  First, Defendant may not use any of that evidence *except to rebut Plaintiff's experts*. Among other things, Defendant may not use that evidence to support his own summary

ORDER – 14

judgment motion or any other pretrial motion.  He may use it in opposition to one of Plaintiff's motions only if Plaintiff relies on the opinion that prompted the rebuttal testimony.  Similarly, Defendant may not use a rebuttal disclosure at trial unless one of Plaintiff's experts testifies as to the opinion that prompted the rebuttal testimony (or Plaintiff relies on such an opinion in one of his own pretrial motions).  At trial, the court may impose additional sanctions if Defendant's experts attempt to make up for the shortcomings of their initial reports without staying within the scope of rebuttal testimony, or if the experts do not follow this court's rulings.  The court might, for example, not merely instruct the jury to disregard such testimony, it might inform the jury that the witness is prohibited from addressing certain matters because Defendant did not timely provide his experts with underlying evidence.

**D.      The Parties Must Meet and Confer to Reduce their Reliance on Expert Testimony.**

        Finally, the court returns to the quagmire it described at the outset of this motion. Discovery will close on July 21.  The declarations of counsel for both parties suggest that there will be discovery yet to complete, and in particular that Plaintiff's counsel declined to depose at least some of Defendant's rebuttal experts pending the outcome of this motion.  The next significant deadline in this case is the deadline for filing dispositive motions on August 19.  The court will permit the parties to conduct additional depositions of expert witnesses, if necessary, until August 13.  Before doing so, however, the court requires the parties to meet and confer *in person* to discuss reducing the number of experts on which each party will rely.  After completing that discussion, the parties should attempt to agree on a schedule for completing expert depositions.  Although the parties must discuss those two topics, they should also discuss any others that will save the jury from the quagmire the parties have created with their expert disclosures.  If there is ever a case that requires 25 expert witnesses or more, the court is confident that this is not one of them.  The court is also confident that everyone – the parties, the jury, and the

ORDER – 15

court – will benefit from a more streamlined approach to this case.  Putting that aside, the court will hold the parties to their 7-10 day trial estimate, and will ultimately put the parties on a "clock" that apportions time evenly between them based on the court's ultimate conclusion as to the length of trial.  They cannot reasonably expect to present testimony from 25 or more expert witnesses in that time.  The court urges the parties to reach their own solution to the problem they have created; the alternative is to risk a solution from the court enforcing LCR 43(j), and prohibiting testimony that is cumulative or of marginal value to the jury.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part Plaintiff's motion to exclude evidence.  Dkt. # 39.  The court strikes the portions of Defendant's rebuttal expert reports that exclude the scope of proper rebuttal, and prohibits Defendant from relying on those portions.  Defendant may use the proper rebuttal testimony solely as rebuttal.  The parties shall attempt to agree on an attorney fee award to Plaintiff in accordance with this order, and Plaintiff shall file a motion if necessary no later than August 22.  The court will permit the parties to complete any expert depositions until August 13.

DATED this 18th day of July, 2014.

*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 16